Tukel, J. (concurring).
I agree that summary disposition must be granted to defendant, and I join the majority opinion. There are two principal legal points at issue: (1) did the pickup truck hit, or cause an object to hit, the ambulance as required by the policy language for there to be coverage and (2) was the pickup truck a "hit-and-run vehicle" as required by the policy language for there to be coverage. The Chief Judge and I answer the first question in the negative, which is sufficient to mandate summary disposition in favor of defendant. The dissent answers the first question in the affirmative by relying on previous decisions of this Court that have ignored the second question and that have merely assumed that the vehicles at issue in those cases were hit-and-run vehicles. I write separately to identify the assumptions that have been and are being built into our jurisprudence-assumptions I believe merit review by our Supreme Court. Although this case likely does not present the issues clearly enough to warrant that review, I believe those assumptions would merit review in a future case..
I. POLICY LANGUAGE
The policy at issue here required that the pickup truck carrying the drywall "hit, or cause an object to hit , an 'insured', a covered 'auto' or a vehicle an 'insured' is 'occupying[.]' " (Emphasis added.) Rather than focusing on the critical "hit, or cause an object to hit" language, as does the majority, the dissent focuses on this Court's opinion in Dancey v. Travelers Prop. Cas. Co. of America , 288 Mich. App. 1, 792 N.W.2d 372 (2010) :
The majority indicates that the Dancey Court focused on the possibility of a "substantial physical nexus" between the ladder and another vehicle and not on the "cause an object to hit" phrasing from the policy. Implicit in the Dancey Court's holding, however, was that the situation in Dancey satisfied the pertinent language of the policy. Therefore, Dancey provides supportive caselaw for plaintiff's position in the present case. [Post at 230.]
I respectfully disagree. "A point of law merely assumed in an opinion, not discussed, is not authoritative." United States v. Oleson , 44 F.3d 381, 387 (C.A. 6, 1995) (Nelson, J., concurring), overruled on other grounds by United States v. Reed , 77 F.3d 139 (C.A. 6, 1996) ; see also Webster v. Fall , 266 U.S. 507, 511, 45 S.Ct. 148, 69 L.Ed. 411 (1925) ; Othi v. Holder , 734 F.3d 259, 265 n. 3 (CA 4, 2013) ; Nelson v. Monroe Regional Med. Ctr. , 925 F.2d 1555, 1576 (C.A. 7, 1991).[1] Consequently, the dissent's reliance on Dancey's "[i]mplicit" holding of a point not raised or ruled on, but merely assumed, is misplaced. As the majority opinion properly holds, Dancey did not decide whether the facts of the present case satisfy the requirement in the policy that "[t]he vehicle must hit, or cause an object to hit" the insured, and Dancey therefore does not support plaintiff's position regarding that requirement. The majority correctly construes *851 those words, which plainly do not cover the situation here-in which the ambulance hit stationary objects that had been dropped by the pickup truck, rather than the pickup truck causing objects to hit the ambulance.
II. WHAT CONSTITUTES A "HIT-AND-RUN VEHICLE"?
The analysis in Dancey has another flaw-it fails to fully consider what is necessary for a vehicle to constitute a "hit-and-run vehicle," the threshold for coverage in the first instance. Defendant argues that there is no evidence that the driver of the pickup truck knew of an accident and then left the scene, the statutory definition of some hit-and-run offenses. Both the majority and the dissent agree that defendant's reliance on statutory definitions is misplaced; because the term itself is undefined in the policy, statutory definitions have no applicability, and the term must be given its ordinary meaning. See Citizens Ins. Co. v. Pro-Seal Serv. Group, Inc. , 477 Mich. 75, 83, 730 N.W.2d 682 (2007). The majority and dissent also agree that if the term "hit-and-run vehicle" encompasses a requirement that the driver had to have known of the accident, there was sufficient evidence of knowledge here to deny summary disposition on that point. That is so in this case because one fair reading of the record is that the drywall fell off the truck just seconds before the ambulance hit it, as the majority opinion recognizes. Under those circumstances, it is a fair inference that the driver would have felt the shift in weight of the truck, and would have looked up at the rearview mirror and seen the accident or its immediate aftermath. The driver likely would have heard the crash as well. Therefore, there was sufficient evidence in this case to conclude that the truck was a hit-and-run vehicle and that coverage was at least possible, which is sufficient to preclude summary disposition on that issue.
A. HIT AND RUN v RUN AND HIT
Dancey and Berry v. State Farm Mut. Auto. Ins. Co. , 219 Mich. App. 340, 556 N.W.2d 207 (1996), the cases relied on by the dissent and by plaintiff, however, contain a flaw in the form of an assumption that is related to the knowledge issue. The requirement of a "hit-and-run vehicle" requires something basic-that a vehicle hits another vehicle and then runs. Regardless of whether the phrase "hit-and-run" imposes some requirement of knowledge on the part of the driver, its very phrasing imposes a temporal requirement-the "hit" must precede the "run." Dancey discussed only what constitutes the "hit" portion of the analysis; after finding that satisfied, it did not discuss the "run" component at all. Therefore, under Dancey , a vehicle that in some sense starts a chain of events that later causes an accident (thus, according to Dancey , satisfying the "hit, or cause an object to hit" language of the policy) is assumed to constitute a "hit-and-run vehicle." But that cannot be correct, as the facts of Dancey demonstrate.
In Dancey , a ladder fell or dropped off a truck some time before the plaintiff's vehicle struck the ladder on the highway. At least one vehicle in front of the plaintiff's, which had blocked her view, managed to avoid the ladder. Dancey , 288 Mich. App. at 18, 792 N.W.2d 372. Witnesses at the scene talked about a truck that may have dropped the ladder, but the plaintiff did not know whether anyone had seen a truck. Id .
Accordingly, even assuming that the "hit" portion of the hit-and-run requirement was met in Dancey , there was no evidence that the driver fled or "ran" from the accident, even if the driver knew that the ladder had fallen off. Unlike in the *852 present case, there was no immediate accident in Dancey that followed the ladder coming to a stop on the roadway, and when the ladder fell it was not necessarily the case that an accident would ensue. One vehicle seemed to have avoided the ladder, and the plaintiff almost did as well. But in any event, all that the evidence showed was that after losing the ladder, the truck continued driving before an accident took place. Even if it could be proved that the driver of whatever vehicle lost the ladder knew that it had fallen off, at most it could be said that the driver had created a high likelihood of an accident by creating a very dangerous situation. Continuing one's driving under such circumstances, i.e., not stopping, is not flight or leaving the scene of an accident (as no accident has yet occurred) and thus does not fit the ordinary sense of running as used in the term "hit-and-run vehicle." By thereby putting the cart before the horse, Dancey converted the term "hit-and-run" into a new concept, "run-and-hit," because the later accident had the legal effect of turning the driving that preceded the accident into the running. Dancey labeled a truck that created a dangerous condition short of an accident and continued driving a "hit-and-run vehicle" after it was known with hindsight that an accident occurred. Dancey simply ignored or overlooked the fact that there must first be a "hit" and then a "run" in order for a vehicle to become a "hit-and-run vehicle." By ignoring the hit-and-run requirement, Dancey violated the rule that "[t]he language of insurance contracts should be read as a whole and must be construed to give effect to every word, clause, and phrase," Mich. Battery Equip., Inc. v. Emcasco Ins. Co. , 317 Mich. App. 282, 284, 892 N.W.2d 456 (2016) (quotation marks and citation omitted), by essentially reading the "run" requirement of "hit-and-run" out of the policy.
Berry , a case also cited by the dissent, demonstrates this point even more clearly. In Berry , a truck was hauling a load of scrap metal. At some point it stopped, and the driver got out and inspected the load. Between 5 and 15 minutes later, at a spot about a half-mile from where the driver had stopped to inspect the truck, a fallen piece of metal caused an accident. Berry , 219 Mich. App. at 350, 556 N.W.2d 207. By that time, the truck had long since driven away. The Berry Court examined the facts and determined that "a substantial physical nexus between the hit-and-run vehicle and the object struck by plaintiff was established." Id . The Berry Court did not discuss whether or how the truck had "run" from what it determined was the "hit." Even setting aside whether there was a basis for determining "a substantial physical nexus" between the truck and the plaintiff's vehicle, labeling the truck "the hit-and-run vehicle" simply because it continued driving and was gone from the scene of the subsequent accident ignores the temporal requirement of a hit followed by a run. It is not hard to imagine a scenario, such as in Berry , in which a sharp piece of metal could lie on a rural road for days undiscovered and then cause an accident. Under those circumstances, labeling someone a "hit-and-run" driver for having driven days before, even if the driver had known about a part falling off, simply strains the term "hit-and-run" beyond a reasonable reading. See Radenbaugh v. Farm Bureau Gen. Ins. Co. of Mich. , 240 Mich. App. 134, 138, 610 N.W.2d 272 (2000) (stating that courts should avoid strained constructions of insurance policies).[2]
*853 B. APPLICATION TO CURRENT CASE
In the present case, the policy language, properly construed, solves the problem. Its requirement that a vehicle "hit, or cause an object to hit" an insured vehicle (as opposed to the insured vehicle hitting a stationary object, as in this case) necessarily requires that an accident occur before whatever driving by the unidentified vehicle is labeled as running. However, if this Court continues to adopt the Dancey and Berry assumptions of what constitutes "hit and run" then our Supreme Court will have to address the issue in an appropriate case.

Contrary to the suggestion made in the concurring opinion, I do not find that Dancey and Berry are strictly controlling in the present case. I find them suggestive of coverage, and reading them in conjunction with the plain language of the policy leads me to conclude that the trial court did not err by denying summary disposition to defendant.

I agree with the majority that defendant was not entitled to summary disposition on the basis of the argument relating to the common definition of a "hit-and-run vehicle" because, contrary to defendant's argument, the trial court correctly concluded that there were genuine issues of fact regarding knowledge on the part of the driver. Whether this knowledge must ultimately be proved in order for plaintiff to recover is not a question currently before us because we are reviewing, simply, whether the trial court correctly denied defendant's motion for summary disposition.